FILED

2009 Sep-04  AM 10:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **JAMES MAXWELL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 4:07-CV-2302-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OF DECISION

Plaintiff James Maxwell brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## I.     Procedural History

Plaintiff filed his application for DIB and SSI benefits on May 2, 2005 alleging a disability onset date of July 1, 1998. (Tr. 24). Plaintiff's application was denied and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 27, 34). Plaintiff's cause was heard by ALJ Robert G. Faircloth on July 19, 2006. (Tr. 36, 151-53). In his October 20, 2006 decision, ALJ Faircloth determined that Plaintiff was not eligible for DIB or SSI benefits because he had not been

disabled as defined under Sections 216(I) and 223(d) of the Act for the period of time from July 1, 1998 through the time of the hearing. (Tr. 15, 23).

The Appeals Council denied Plaintiff's request for review of ALJ Faircloth's decision on October 26, 2007. (Tr. 3). The ALJ's decision then became the final decision of the Commissioner, and therefore a proper subject for this court's review under 42 U.S.C. § 1383(c). (Tr. 4-5). Plaintiff timely filed a civil action for review by this court on December 20, 2007.

## II.    ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work.  The claimant's RFC consists of what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.* Once a claimant shows that he can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

> [T]he district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotations and citations omitted).

Plaintiff was born on February 17, 1956, and thus he was forty-two years old at the time of his alleged onset of disability, and fifty years old at the time of the ALJ's October 2006 decision. (Tr. 48). Plaintiff completed high school and subsequently obtained an Associates Degree in Electrical Technology. (Tr. 161, 176). Plaintiff's medical records reflect that he suffered from poliomyelitis as an infant, and as a result has a weakened right leg that is approximately one and one fourth inches shorter than his left leg. (Tr. 99, 113, 164). In spite of this limitation, Plaintiff has nonetheless held several jobs, mostly in the construction industry. In the fifteen year period prior to the alleged onset of disability, Plaintiff has worked in a variety of positions as a farm equipment maintenance worker,

light concrete finisher, tool room attendant, bobcat operator, flagman, and cleanup worker.  (Tr. 74, 161-62, 177-81).

Plaintiff alleges that he has been unable to work since suffering a seizure while walking a distance of approximately one quarter of a mile to exit a job site in 1997. (Tr. 163).  On his initial application for benefits, Plaintiff filled out a "Physical Activities Questionnaire" where he reported that he can stand for less than two hours in one place, walk "short distances" before having to stop and sit or stand, and he estimated that he typically sits for up to twelve hours a day.  (Tr. 66).  On this same questionnaire, Plaintiff cites "pain" as being the reason he can only perform most activities for a duration of ten to fifteen minutes before requiring a break.  (Tr. 71).  On a "Pain Questionnaire" submitted along with the initial application, Plaintiff claims to suffer from "constant pain" that is "constantly changing from head to toe" lasting "from the time I open my eyes till [sic] I go to sleep." (Tr. 72).  On this questionnaire, Plaintiff notes having had a prescription for "Lotromin [sic] for arthritis," which he claims to have taken for two years "by getting free samples from kinfolk who work for doctors."  (Tr. 72-73). Plaintiff claimed not to have used any other medication or methods for relieving his pain. (Tr. 73).

Plaintiff testified before the ALJ that his mental and physical problems currently prevent him from working.  Specifically, he is afraid of falling "at the wrong time" and he "tire[s] fairly easy [sic]."  (Tr. 164).  Plaintiff further testified that he suffers from generalized pain in his left leg, hip, back, shoulders, and elbows.  (Tr. 165).  Plaintiff also complained of numbness in his fingertips and toes that sometimes affects his ability to hold things. (Tr. 165-66).  Plaintiff testified that his daily activities include feeding roosters and doing household chores such as washing dishes, but he claimed to be unable to stand for more than twenty minutes while performing these activities before

4

having to sit down due to pain. (Tr. 169-70). Plaintiff also testified that intermittent numbness in his hands caused by Post-Polio Syndrome would prevent him from performing manual work while sitting down. (Tr. 171-72).

At the request of the SSA, Dr. Rebecca Madden examined Plaintiff on May 26, 2005. Dr. Madden noted that while Plaintiff complained of pain in his right leg and upper lumbar region, he did not appear to be in acute distress. (Tr. 99). She noted that Plaintiff had a moderate limp, but did not use a cane or other assistive device. (Tr. 101). Dr. Madden found that Plaintiff had normal range of motion in the upper extremities, and normal pinch and grasp function in his hands. (Tr. 100). Dr. Madden also found that Plaintiff had a much shorter and smaller right leg and showed slightly reduced range of motion in all directions in the right ankle. (Tr. 101). She found that Plaintiff had a normal range of motion in the hips, knees, and left ankle. (Tr. 101). Dr. Madden diagnosed Plaintiff with a history of polio with right leg sequelae as described, chronic recurrent left shoulder pain, and recurrent lower back pain. (Tr. 101). During examination, Dr. Madden noted that Plaintiff complained of pain when bending forward to thirty degrees and while performing an external rotation of the left hip. (Tr. 101). Dr. Madden wrote in her evaluation of Plaintiff:

> This gentleman may have difficulty with work requiring him to stand for long periods, balance, climb, or perform similar activities, because of his leg problem. He also may have some difficulty with heavy lifting, pulling, or pushing, because of both the back pain and his left shoulder pain. These are both recurrent intermittent problems at this time.

(Tr. 101).

Dr. Madden assigned the following exertional limitations as a result of her examination: occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, sit, stand, or walk for six hours in an eight hour work day, and no additional limitations on pushing or pulling. (Tr. 105). She

concluded that Plaintiff could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl, and never balance or climb ropes, ladders, or scaffolds.  (Tr. 106).

Plaintiff requested a Physical Capacity Evaluation ("PCE") by Dr. Sue Butler-Somner, M.D., completed on July 6, 2006. (Tr. 115-20).  Dr. Butler-Somner had been Plaintiff's treating physician since March 2005, approximately one year prior to the hearing.  (Tr. 157-58).  Dr. Butler-Somner found Plaintiff to have chronic, continuous, moderately severe pain resulting from Post-Polio Syndrome, and noted the following objective signs that he experienced pain: X-ray, joint deformity, muscle spasm, and spinal deformity. (Tr. 117).  Dr. Butler-Somner concluded that Plaintiff could sit for two hours at a time for up to six hours per day, stand or walk for one hour total during an eight hour day. (Tr. 117).  Dr. Butler-Somner placed no work restriction on Plaintiff's use of arms and hands for pushing, pulling, simple grasping, fine manipulation, or fingering/handling, but indicated that Plaintiff could never use legs and feet for pushing or pulling and could never bend, squat, crawl, climb, or reach.  (Tr. 116).

Plaintiff has reported to the emergency room on two occasions with complaints of pain – on March 26, 2006, and on May 6, 2006.  (Tr. 122-34).  On the first occasion, Plaintiff reported pain in his back and leg at a level of nine on a scale of one to ten. (Tr. 131).  Plaintiff was discharged with a prescription for Lortab and Flexaril.  (Tr. 133).  On the second occasion, Plaintiff rated his pain as a ten and described its location as "all over." (Tr. 124).  Plaintiff was discharged with a prescription for Percoset and Robaxin. (Tr. 123).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1998, his alleged onset date of disability.  (Tr. 17).  The ALJ determined that Plaintiff has the "severe" impairment of Post-Polio Syndrome with pain on prolonged standing and sitting.  However, he found

that Plaintiff's impairments, considered either alone or in combination, failed to meet or medically

equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (Tr. 20).  Based on

all symptoms (including subjective complaints of pain), the medical evidence, and testimony, the

ALJ determined that Plaintiff retained the RFC to perform light work with a sit/stand option.  (Tr.

20).  He found that Plaintiff could not perform his past relevant work which was at the medium to

heavy exertional level.  (Tr. 21).

     The ALJ called a vocational expert ("VE") to testify who was present throughout the hearing

and who was familiar with Plaintiff's background, employment experience, and medical history.  (Tr.

175).  The VE testified that Plaintiff's prior jobs were in the category of semi-skilled, medium

exertion employment.  (Tr. 181).  The VE further testified that if Plaintiff's pain were at a level of

mild or moderate, an individual with Plaintiff's limitations could perform jobs which exist in

significant numbers in the regional and national economies.  (Tr. 196-97).  However, the VE testified

that if Plaintiff's pain were at a level of moderately severe or severe, Plaintiff would be permanently

disabled due to his inability to perform any type of work.  (Tr. 197-98).  The VE also confirmed that

Dr. Butler-Somner's assessment, if assumed to be accurate and supported by the other medical

evidence, would preclude all work because it described Plaintiff's pain as moderately severe, chronic,

and continuous.  (Tr. 199-200).

     Based on the VE's testimony, the medical evidence, and Plaintiff's testimony, the ALJ found

that a significant number of jobs exist in the national economy that Plaintiff is capable of performing

and that Plaintiff was not under a disability at any time through the date of the decision.  (Tr. 20).

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be

expected to produce the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible.  (Tr. 20).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration.  (Pl. Compl. of Dec. 20, 2007 at 2).  Plaintiff asserts that the ALJ's decision was not supported by substantial evidence, that the findings of fact were insufficient to resolve the legal issues, and that proper legal standards were not applied.    (Pl. Compl. of Dec. 20, 2007 at 2). Plaintiff's brief essentially advances two arguments:  (1) the ALJ failed to apply the standard required by Social Security Ruling 96-7p by not considering Plaintiff's reasons for failing to pursue ongoing medical treatment for pain before using the absence of medical treatment as a factor weighing against the credibility of Plaintiff's testimony regarding the severity of the pain; and (2) the ALJ did not give enough weight to the PCE completed by Plaintiff's treating physician, Dr. Butler-Somner, which, together with the testimony of the VE, would have required a finding that Plaintiff was disabled.

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## V.     Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal.  For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and applied the proper legal standards.

### A.     The ALJ Properly Considered Plaintiff's Explanations Regarding Failure to Seek Regular Medical Treatment for Pain in Accordance with Social Security Ruling 96-7p.

Plaintiff initially argues that the ALJ failed to consider his explanations for why he failed to seek certain medical treatment for his pain.  To be sure, a claimant's failure to pursue or maintain a course of medical treatment for pain may cut against the credibility of statements that the pain is severe.  *See* SSR 96-7p, 1996 WL 374186, 7 (S.S.A. 1996).

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure.

*Id.* Plaintiff's argument rests on the continuation of this paragraph, which explains that the ALJ must consider any explanations for failure to seek or maintain treatment before making an adverse inference regarding a claimant's credibility:

> However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner.

*Id.*

Plaintiff's argument fails because the record shows that the ALJ did in fact hear and consider Plaintiff's explanations. During the hearing, the ALJ recognized that Plaintiff had cited a lack of money as an explanation for his failure to get medical treatment up to the time he quit working. (Tr. 158). The ALJ also specifically asked Plaintiff if the reason for his lack of medical treatment was due to financial hardship or lack of insurance. (Tr. 166). Plaintiff responded by testifying that he was unable to pay for medical treatment or prescriptions, and that he had once borrowed money from his sister to fill a prescription. (Tr. 166). Plaintiff further testified that he had several prescriptions for pain medications that he had unsuccessfully tried to fill using a free drug program. (Tr. 167-68).

It is the province of the ALJ to make findings of credibility, and these findings are entitled to substantial deference if supported by evidence in the record. *See Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996). The ALJ's evaluation of Plaintiff's credibility appears to be based on the degree of consistency between Plaintiff's testimony about the severity of his pain, the objective medical evidence, and Plaintiff's own statements regarding his work history, treatment history, and

daily activities. (Tr. 20-21).  The lack of consistent medical treatment is not the only reason, or even the primary reason cited in support of a finding that "the record as a whole does not support [Plaintiff]'s allegations that he is totally disabled." (Tr. 20).  Though the ALJ did not expressly acknowledge Plaintiff's financial excuses in his opinion, the record shows that the ALJ was aware of Plaintiff's financial hardships, and did ask Plaintiff whether the gaps in his treatment history were attributable to financial difficulty. (Tr. 158, 166). A failure to conduct an appropriate inquiry might warrant reversal in light of SSR 96-7p, *see, e.g.*, *Craft v. Astrue*, 539 F.3d 668 (7th Cir. 2008); however, there is no such failure here.  The record demonstrates that the ALJ assessed Plaintiff's credibility in accordance with the legal standard described by SSR 96-7p, and his findings are supported by substantial evidence.

### B. The ALJ Did Not Err in Failing to Assign Controlling Weight to the Non-Exertional Factor Questionnaire of Dr. Butler-Somner.

Plaintiff next argues that the ALJ failed to give sufficient weight to the PCE completed by his treating physician. As Plaintiff's treating physician, Dr. Butler-Somner's opinion must be given substantial weight unless good cause exists for not doing so. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* at 1241. When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons. *Id.* A treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with other evidence in the record. *Edwards v. Sullivan,* 937 F.2d 580, 583-84 (11th Cir. 1991). However,

where the opinion of the treating physician is conclusory, unsupported by clinical data, or inconsistent with the other medical evidence, the ALJ may properly discredit the treating physician's opinion. *See id.*; *Washington v. Barnhart*, 175 F.Supp.2d 1340, 1346 (M.D. Ala. 2001).

A review of his decision makes clear that the ALJ cited medical evidence and opinions from both Dr. Madden and Dr. Butler-Somner to support a finding Plaintiff has the RFC to perform light work with a sit/stand option. (Tr. 20-21). The ALJ therefore did not entirely discount Dr. Butler-Somner's opinion, and indeed used most of Dr. Butler-Somner's findings as support for his findings on Plaintiff's level of impairment. For example, the ALJ cited the restrictions and exertional limitations noted on Dr. Butler-Somner's PCE form as consistent with a restricted range of light work. (Tr. 21). The ALJ also cited Dr. Butler-Somner's Medical Source Statement (Mental) ("MSS") in which she rated Plaintiff as having only mild to moderate limitations in all areas. (Tr. 21). In this regard, the ALJ gave Dr. Butler-Somner's opinion substantial weight. The only portion of Dr. Butler-Somner's opinion that the ALJ discounted was the pain rating of "moderately severe" expressed on the PCE form, which, according to the VE, would have precluded all work. (Tr. 21, 199-200).

The question here is whether the ALJ had good cause to discount Dr. Butler-Somner's pain rating on the PCE form. The court concludes that, in light of all the evidence, the ALJ had good cause to discount that opinion.

First, a finding that Plaintiff's pain was in the "Moderately Severe" category or in the "Moderate" category would be dispositive as to his disability claim. Accordingly, it was entirely appropriate for the ALJ to evaluate carefully Dr. Butler-Somner's PCE pain rating in light of all other evidence in order to determine how much, if any, weight it deserves.

A review of the "Non-Exertional Factors" questionnaire completed by Dr. Butler-Somner shows that there are four "checkbox" choices for diagnosing or rating pain:

> Mild (would constitute an awareness but causing no handicap in the performance of the particular activity);

> Moderate (could be tolerated but would cause *some* handicap in the performance of the activity precipitating the pain);

> Moderately Severe  (could be tolerated but would cause *marked* handicap in the performance of the activity precipitating the pain);

> Severe (would preclude the activity precipitating the pain).

(Tr. 117) (emphasis added).  Despite the vast difference in legal consequence, the only difference in the definition of the "Moderate" category versus the "Moderately Severe" category is the use of the word "some" in the definition of the former where the latter uses "marked."  Turning to the MSS completed by Dr. Butler-Somner, there are five categories in which a patient may be rated with respect to performing certain activities.  These categories are defined on the form as follows:

> NONE: No impairment in this area
> MILD: Suspected impairment of slight importance which does not affect ability to function
> MODERATE: An impairment which affects but does not preclude ability to function
> MARKED: An impairment which seriously affects ability to function
> EXTREME: Extreme impairment of ability to function

(Tr. 118).  The instructions at the top of the form include an advisement to "consider in your assessment the level of pain, ... if any, reasonably expected from the documented medical impairments." (Tr. 118).  On this form, Dr. Butler-Somner rated Plaintiff as "Moderate" with regards to the "degree of restriction of [Plaintiff]'s daily activities" and "Mild" with regards to "[e]stimated degree of impairment of [Plaintiff]'s ability to complete a normal workday and workweek."  (Tr. 119).  Dr. Butler-Somner also checked a box marked 'Yes' under question 7 at the bottom of the page

13

which reads in part: "As a result of [Plaintiff]'s medical condition, attendant limitations, pain, and/or

any side effects of medication(s), would [Plainitff] likely have to miss three or more days per month

from work?" (Tr. 117).

> The ALJ rejected Dr. Butler-Somner's opinion of the degree of Plaintiff's pain by noting that:
>
>> [I]t is noteworthy that, despite complaints of pain, [Plaintiff] has not sought or
>> received treatment on a regular basis.  . . .  Moreover, no treating or examining
>> physician [*e.g.*, Dr. Madden] has ever indicated that [Plaintiff] was unable to perform
>> work activity on a full time basis.  His daily activities such as feeding his roosters,
>> watching T.V. and doing some household chores indicates that he is active during the
>> day.  Dr. Butler-Somner completed a Medical Source Statement (Mental) form in
>> which she also indicated that [Plaintiff] has only mild to moderate limitations in all
>> areas listed.

(Tr. 21).  Thus, the ALJ pointed to substantial evidence which supports his findings which

discounted the PCE of the treating physician.

> With regards to *Phillips* criteria – (1) the treating physician's opinion was not bolstered by

the evidence; and (2) the evidence supported a contrary finding – the ALJ cited all of the

counterbalancing evidence including Dr. Madden's findings, Plaintiff's medical history and

testimony, and Dr. Butler-Somner's other findings. (Tr. 21).  None of this counterbalancing evidence

strengthens a conclusion that Plaintiff suffers from moderately severe pain as opposed to moderate

pain.  This evidence is more than a scintilla, and is therefore substantial evidence supporting the

ALJ's conclusion that Dr. Butler-Somner's pain rating of "Moderately Severe" was not bolstered by

the evidence in the record.  *See, e.g., Dyer*, 395 F.3d at 1210. This same evidence could also be cited

to support a finding that  contrary to Dr. Butler-Somner's conclusion, Plaintiff's pain was "Moderate"

instead of "Moderately Severe".

But even if reliance on the first two *Phillips* criteria were insufficient, the third criterion – that the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records – is satisfied by the ALJ's analysis.  First, a diagnosis of "Moderately Severe" pain is conclusory in the sense it is not a medical diagnosis of any objectively verifiable disease or condition.  The structure of and imprecise language on the PCE and MSS forms show that the assignment of Plaintiff to one or another pain category is not a rigorous medical determination that is rightly beyond the pale of common sense and understanding. The forms seek to put Plaintiff's latent pain level in a category with legal significance based on the informed judgment of an examining physician and do not require underlying clinical data or supporting medical evidence, only a check mark or a circle, and a signature.

Second, Dr. Butler-Somner chose to put Plaintiff in the "Moderately Severe" category on the PCE, but why she chose this category instead of the "Moderate" category is not clear from what is in the record.  The ALJ notes that there is medical evidence of "objective signs of pain" in the form of an x-ray, joint deformity, muscle spasm, and spinal deformity, but there is no interpretation of this evidence by Dr. Butler-Somner to explain why Plaintiff suffers from a "marked" handicap in the performance of an activity precipitating pain as opposed to "some" handicap in the performance of the same activity.  (Tr. 19).  The space provided on the PCE for such an explanation is left blank. (Tr. 115).  Dr. Butler-Somner's only comments on either the PCE or MSS are conclusory diagnoses that Plaintiff has post-polio syndrome that continues to worsen and that Plaintiff has chronic pain syndrome and takes medication.  (Tr. 117, 120).  Under these circumstances, it was within the ALJ's discretion to limit or discount as conclusory Dr. Butler-Somner's opinion regarding Plaintiff's pain rating.  *See*, *e.g.*, *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) *citing Bloodsworth v.*

15

*Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Holley v. Chater*, 931 F.Supp. 840, 848 (S.D. Fla. 1996).

Finally, on the MSS, Dr. Butler-Somner placed Plaintiff's level of work restriction as "Mild," which was inconsistent with her opinion on the PCE in light of the VE's testimony that a moderately severe level of pain would preclude all work.  (Tr. 119).  The ALJ was therefore justified in discounting or limiting this part of Dr. Butler-Somner's opinion on the basis that it is inconsistent with the doctor's own medical records.  *See Phillips* at 1241.

Based on the above, the ALJ was not required to assign controlling weight to Dr. Butler-Somner's rating of Plaintiff's pain level, and he did not err by failing to do so.  Furthermore, the ALJ properly articulated reasons why he chose to discount Dr. Butler-Somner's pain rating, and these reasons were supported by substantial evidence.

**VI.    Conclusion**

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ____3rd_____ day of September, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

16